**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-01727-REB

ROBERT ALAN KARSTETTER,

    Plaintiff,

v.

CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#3][2], filed July 3, 2012, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, and thus her name is substituted for that of Michael J. Astrue as the defendant in this suit. **FED. R. CIV. P.** 25(d)(1). By virtue of the last sentence of 42 U.S.C. § 405(g), no further action need to taken to continue this lawsuit.

[2] "[#3]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

Plaintiff alleges that he is disabled as a pain post-status bilateral hip replacement surgery, degenerative disc disease, and obesity.  After his applications for disability insurance benefits and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge.  This hearing was held on December 2, 2011.  At the time of the hearing, plaintiff was 49 years old.  He has an eleventh grade education and a GED certificate, and past relevant work experience as a laborer, construction work, and vacuum technician.  He has not engaged in substantial gainful activity since November 1, 2010, his alleged date of onset.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits.  Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  The ALJ found that plaintiff had the residual functional capacity to perform sedentary work with certain postural and environmental limitations.  Although this finding precluded plaintiff's past relevant work, the ALJ found that there were other jobs existing in significant numbers in the national and local economies that he could perform.  He therefore found plaintiff not disabled at step five of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy."  42

U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. **See Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual

functional capacity.

20 C.F.R. § 404.1520(b)-(f).[3]  ***See also Williams v. Bowen*** 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  ***Id.***  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  ***Brown***, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of

---

[3]  Throughout this opinion, although I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits, identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner.  ***Id.***

## III.  LEGAL ANALYSIS

Plaintiff claims the ALJ erred by (1) failing to consider the combined effects of all his impairments in determining his residual functional capacity; (2) discrediting his subjective complaints of pain and physical limitations; (3) concluding that his impairments were not presumptively disabling at step 3 of the sequential evaluation; (4) failing to afford greater weight to the opinion of his treating source; and (5) failing to carry his burden of proof at step 5 to show that the alternative jobs identified by the vocational expert were within plaintiff's residual functional capacity.  Finding no such reversible error, I affirm.

In his first, two, interrelated points of error, plaintiff suggests that the ALJ improperly discredited his subjective reports of daytime grogginess caused by his pain medications and failed to adequately consider the side effects of his medications in assessing plaintiff's residual functional capacity.  The record clearly belies the assertion that the ALJ failed to consider the reported side effects of plaintiff's medications.  To the contrary, the ALJ recounted plaintiff's testimony that his medications made him excessively groggy (Tr. 30), but discredited those reports because plaintiff had failed to endorse such symptoms in reporting his functional limitations to the agency (Tr. 32,

251-258) and in fact, stated that he had no problems with attention (Tr. 256).[4]

More to the point, I cannot find error in the ALJ's determination to discredit plaintiff's subjective reports regarding his own limitations and the effects of pain and medication on his functional capacity. "[C]redibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quoting *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)). The ALJ gave clear, specific, and legitimate reasons why he did not find plaintiff's testimony entirely credible, and I find nothing in the record that would warrant reversal on this basis.[5]

Plaintiff next argues that the ALJ erred at step 3 of the sequential evaluation by failing to discuss the reasons why he found plaintiff's condition did not meet or equal any listed impairment.[6] Here again, the opinion itself clearly belies this assertion. The ALJ specifically stated that there was no medical evidence demonstrating the type of medical signs necessary to bring plaintiff's conditions within the realm of presumptively disabling impairments recognized by the listings. (Tr. 31.)

---

[4] The ALJ noted specifically plaintiff's report that he could read and watch television "fine" and did these activities daily (*see* Tr. 32, 255) was incompatible with his testimony that he could not remember what he reads (*see* Tr. 58-60, 64-66).

[5] It appears that plaintiff was recommended for a sleep study in January, 2011 (Tr. 282), but was found not to suffer from sleep apnea (*see* Tr. 345). The concomitant reference in the treatment notes to plaintiff's daytime sleepiness (*see* Tr. 345) says nothing about the extent of or limitations attendant on that condition. In fact, plaintiff's testimony supports the inference that he gets sleepy when sitting, but is able to reawaken himself by simply standing and moving around.

[6] The Commissioner's Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (effective Aug. 2, 2010), sets forth medical criteria pursuant to which impairments of various bodily systems will be considered presumptively disabling. 20 C.F.R. § 404.1520(d). *See Sullivan v. Zebley*, 493 U.S. 521, 532, 534-35, 110 S.Ct. 885, 893, 107 L.Ed.2d 967 (1990). Section 1.00 addresses disorders of the musculoskeletal system, and section 1.04 thereunder deals specifically with disorders of the spine.

Moreover, an MRI report from September 2011 (*see* Tr. 382) does not undermine this determination. Spinal disorders are presumptively disabling when the following criteria, *inter alia*, are met:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.[7] Assuming *arguendo* that the report's finding that bulging discs "*may be* affecting the undersurface of the existing L2 nerve roots" (Tr. 382 (emphasis added)), is sufficient to meet the capsule definition's requirement of "compromise of a nerve root," there is no evidence from which it can be definitively determined that *all* the additional criteria of the listing are met.[8]  *See*

***Sullivan v. Zebley***, 493 U.S. 521, 531, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990) ("An impairment that manifests only some of those criteria, no matter how severely,

---

[7] Plaintiff does not challenge the ALJ's finding that he did not meet the requirements of section 1.04C, which require proof of "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04C. The "inability to ambulate effectively" requires that the claimant have "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* § 1.00(B)(2)(b)(1). Although plaintiff uses a single point cane to walk, there is no evidence that it limits the functioning of both his upper extremities.

[8] Plaintiff's citation to evidence of positive straight leg raising tests (*see* Tr. 282, 418) and complaints of numbness (*see* Tr. 420) addresses only some of the requirements of the listing.

does not qualify.") (footnote omitted). I thus find no reversible error in the ALJ's step 3 determination that plaintiff's physical impairments did not meet the listings.

Plaintiff also suggests that the ALJ failed to properly weigh the opinion of his treating source, Dr. Amy Alter-Pandya. The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). A treating source opinion cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision. *Watkins*, 350 F.3d at 1301. Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

Dr. Alter-Pandya authored a "Med-9" form on plaintiff's behalf. (Tr. 283-284.) The Med-9 form is part of the application for benefits under the Colorado State Aid to the Needy Disabled (AND) program. The Tenth Circuit has refused to find categorically that Med-9 forms are entitled to no weight, especially where they have been completed by a treating source. *See Andersen v. Astrue*, 2009 WL 886237 at * 6-7 (10th Cir. Apr. 3, 2009); *Angster v. Astrue*, 703 F.Supp.2d 1219, 1228 n.2 (D. Colo. 2010). Nevertheless, the ALJ did not reject Dr. Alter-Pandya's opinion on that basis, nor (contrary to plaintiff's suggestion) did he reject that opinion merely because it went to an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e); *Sosa v. Barnhart*, 2003 WL 21436102 at *5 (D. Kan. April 10, 2003), *adopted*, 2003 WL 21428384 (D.

Kan. Jun. 17, 2003). Instead, he further concluded that contemporaneous treatment notes did not support the level of disability suggested by Dr. Alter-Pandya (*see* Tr. 32, 297-301) and that the other medical opinions of record were more consistent with the evidence as a whole (*see* Tr. 32-33, 81-88, 355-360). I can find no error in these determinations that would warrant reversal.

Finally, I find no reversible error in the ALJ's step 5 determination. Plaintiff suggests that he did not have the mental capacity to perform the alternative jobs identified by the vocational expert and relied on by the ALJ because both required a reasoning level of 3. *See* Dictionary of Occupational Titles, Appendix C, § III, ¶ 03, *available at* http://www.occupationalinfo.org/appendxc_1.html#III (job assigned reasoning level of 3 requires the ability to "[d]eal with problems involving several concrete variables in or from standardized situations") (last accessed April 23, 2013). However, as noted above, the ALJ properly discredited plaintiff's subjective reports of daytime sleepiness and lack of concentration associated with his medications, and plaintiff points to nothing else in the evidence that supports those or any other mental limitations on his functional abilities.[9] *See Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000) (hypothetical to the vocational expert need only incorporate those limitations found the by ALJ to be supported by the record).

---

[9] For example, a claimant who is limited to simple work "arguably lack[s] the mental [residual functional capacity] for jobs at or above [a reasoning level 2]." *Scheibeler v. Astrue*, 2009 WL 3077310 at *3 (D. Colo. Sept. 21, 2009) (citing cases).

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated April 23, 2013, at Denver, Colorado.

BY THE COURT:

Robert E. Blackbum
United States District Judge